**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
COLUMBIA DIVISION**

| | |
|---|---|
| Angele'ck Rice-Ife, individually and as Personal Representative of the Estate of Gamba Ife (a/k/a Gary Dale Lawson, Jr.), | )<br>)<br>)<br>) **COMPLAINT**<br>Plaintiff, )<br>)<br>vs. ) C/A No:<br>)<br>Heinz-Peter Schafer, MD in his individual capacity; Rasheeda Williams, LPN, in her individual capacity; and Jane Does 1-10 in their individual capacities.<br>)<br>)<br>)<br>Defendant ) |

Plaintiff Angele'ck Rice-Ife, individually and as Personal Representative of the Estate of Gamba Ife, by and through her undersigned counsel of record, brings this civil rights action pursuant to 42 U.S.C. § 1983 against Heinz-Peter Schafer, Rasheeda Williams, and Jane Doe(s) (collectively "the Defendants").

## **PARTIES**

1.  Plaintiff Angele'ck Rice-Ife (hereinafter "Plaintiff") is a citizen and resident of the State of Arizona. Plaintiff is the wife of Decedent Gamba Ife and was appointed the Personal Representative of his estate by order of the Circuit Court for Hillsborough County, Florida, Probate Division, dated February 5, 2024, in File No. 24-CP-000306.

2.  At all times relevant to this complaint, Decedent Gamba Ife (a/k/a Gary Dale Lawson, Jr. and hereinafter "Ife") was 43 years old and was a veteran of the United States Army.

3.  Heinz-Peter Schafer (hereinafter "Defendant Schafer") is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a physician at the

Alvin S. Glenn Detention Center ("ASGDC") and was acting under color of state law at all times relevant to this complaint. He is being sued in his individual capacity.

4. Rasheeda Williams (hereinafter "Defendant Williams") is a citizen of South Carolina and resides in Richland County, South Carolina, and was employed as a licensed practical nurse at the ASGDC and was acting under color of state law at all times relevant to this complaint. She is being sued in her individual capacity.

5. Upon information and belief, Jane Does 1-10 (hereinafter "Defendant Doe(s)") are citizens of South Carolina and reside in Richland County, South Carolina, and were employed as nurses or other healthcare providers at ASGDC and were acting under color of state law at all times relevant to this complaint. They are being sued in their individual capacities.

## JURISDICTION AND VENUE

6. This Court has subject matter jurisdiction over the federal claims against Defendants pursuant to 28 U.S.C. § 1331 because those claims arise under federal law, 42 U.S.C. § 1983.

7. The Court further has personal jurisdiction over Defendants as they reside in this District and its acts and/or omissions complained of occurred within this District.

8. Venue is proper in the District of South Carolina, Columbia Division, pursuant to 28 U.S.C. § 1391(b)(1) & (2), as the Defendants reside in this District and the acts or omissions complained of occurred within this District.

## FACTUAL ALLEGATIONS

9. In 2009, many years before his incarceration, Garry Dale Lawson, Jr. changed his name to Gamba Ife.

10. Prior to entering the custody of ASGDC, Ife was diagnosed with severe paranoid schizophrenia.

11. On or about May 7, 2023, Ife was arrested and booked into Alvin S. Glenn Detention Center (ASGDC) while in the midst of a mental health crisis.

12. Ife was initially placed in general population. However, at some point he was moved to a unit for detainees with mental health issues. As such, Defendants were aware that Ife has serious medical needs which demanded segregation from general population and a higher level of medical supervision.

13. Upon information and belief, upon entering the mental health unit, ASGDC staff began referring to Ife by his former name. As a result, Plaintiff lost contact with Ife.

14. Additionally, prior to entering the custody of ASGDC, Ife was diagnosed with diabetes mellitus (Type II) and the same was included in his VA medical records. Ife had been diagnosed with diabetes for over fifteen (15) years at the time he was detained at ASGDC.

15. Though Defendants had knowledge that Ife had serious medical needs, the sum total of his medical records while at the facility are so scant as to evidence his wholly inadequate medical care for a person with his needs.

16. The ASGDC records obtained by Plaintiff indicate other unknown medical providers ("Defendant Does") encountered Ife during his detainment, had access to his medical records, and had knowledge of his serious medical needs and his requests for care and treatment.

17. Just prior to his arrest, because Ife was in the midst of a mental health crisis, Plaintiff had lost contact with him and did not know where he was. Plaintiff called hospitals, jails, and police departments throughout the region looking for Ife before locating him at ASGDC.

18. After locating Ife, Plaintiff spoke with Doe Defendants who were members of the ASGDC nursing staff regarding Ife's diagnoses and emailed the ASGDC medical staff Ife's medication list.

19. Additionally, Plaintiff corresponded with one of Ife's doctors, Dr. Joshua Chandy at James Haley VA Hospital in Tampa, Florida, who faxed Ife's medical paperwork to the ASGDC medical staff.

20. Despite being provided with his medical history, including diabetes, and a list of his medications, the ASGDC medical staff did not prescribe Ife any diabetes medication or otherwise attempt to treat his diabetes.

21. The Defendants are aware of the risks associated with failing to treat a detainee with diabetes and/or allowing a detainee with diabetes to go untreated.

22. The Defendants are aware that these risks to a diabetic detainee are compounded when such a detainee also has a diagnosed mental health condition.

23. The Defendants were aware of the risks associated with failing to closely monitor and document Ife's condition.

24. Ife received no treatment or medication from ASGDC medical staff, including the named Defendants and Doe Defendants, after his diabetes diagnosis and medication list were provided.

25. Additionally, ASGDC medical staff, including the Defendants, made no efforts to arrange for Ife to see an outside medical specialist for treatment, to order a suitable diet for his medical needs, or to otherwise ensure that his diabetes was properly managed

26. On May 11, 2023, Defendant Schafer prescribed apriprazole (hereinafter referred to by its brand name, "Abilify") to Ife to treat his mental health condition.

27. Though Defendant's medical records indicate Ife was prescribed Abilify by Defendant Schafer beginning on this date, no medication administration record showing the dates and times Ife received his medication is contained in his medical records.

28. The package insert for Abilify contains a boxed warning that the drug can cause hyperglycemia and/or hypoglycemia in patients with diabetes. As such, prescribers like Defendant Schafer have knowledge of this risk and are specifically warned that individuals with diabetes should be consistently monitored and have their blood sugar tested throughout treatment with Abilify.

29. Defendant Schafer recklessly ignored this warning which required him to monitor the associated risks to Ife.

30. The records indicate that Defendant Schafer never ordered regular blood sugar testing for Ife.

31. The medical staff at ASGDC, including Defendant Williams and the Doe Defendants, did not consistently monitor Ife while he was incarcerated and/or taking Abilify, nor did they routinely check his blood sugar levels.

32. To the contrary, Ife specifically informed his wife, Plaintiff, that he was being neglected by the ASGDC staff. During this conversation, Plaintiff noticed that Ife was so angry and frustrated about being neglected, he appeared to be in a stupor.

33. On June 7, 2023, Ife had a visit with Kathleen Potter, a mental health provider at ASGDC.

34. Immediately following this visit, Potter notified Defendant Williams and other Doe Defendants on the medical staff that Ife had been diagnosed with diabetes mellitus (Type II), and this was recorded in his ASGDC medical records.

35. Defendant Williams tested Ife's blood sugar level and recorded it in Ife's medical records.

36. On June 7, 2023, a medical record was created by Defendant Williams indicating that Kathleen Potter had reported Ife's Type II diabetes diagnosis, and this record was reviewed by Defendant Schafer on June 8, 2023.

37. However, Ife continued to receive no treatment or medication from the Defendants after Potter's report and Defendant Williams' single blood sugar test.

38. Defendant Shafer made no efforts to arrange for Ife to see an outside medical specialist for treatment, to order a suitable diet for Ife's medical needs, or to otherwise ensure that Ife's diabetes was properly managed.

39. Additionally, upon information and belief, the Defendants did not cross-reference Potter's report with the medical documentation provided by Plaintiff and Dr. Chandy, nor did any Defendant request a copy of Ife's other known medical records for review.

40. About a month later, on July 6, 2023, Ife had a follow up with the mental health provider. He presented in a dysphoric mood, would not maintain eye contact, consistently lowered his head.

41. Ife reported that he had been taking his prescribed medications when they were given to him, but that he had not been receiving medications from various Doe Defendants at night.

42. On July 8, 2023, Ife reported to the medical unit with pain and extreme swelling in both lower legs. Medical staff recorded that Ife suffered from pitting edema, a state of such severe swelling from fluid accumulation that when the skin on an extremity is pressed, it leaves an indention or "pit" in the skin.

43. This medical record regarding Ife's pain and edema was reviewed by Defendant Schafer on July 10, 2023.

44. The Defendants are aware that peripheral edema in the lower extremities is a common symptom of untreated diabetes, as well as a sign of kidney dysfunction.

45. On July 12, 2023, Ife reported to the medical unit again complaining of pain and presenting with pitting edema in his lower extremities. This medical record was reviewed by Defendant Schafer on July 12, 2023.

46. On July 21, 2023, Ife had a follow up with mental health services, who noted that Ife presented in an agitated mood and remained delusional, combative, and aggressive.

47. No action was taken by any of the Defendants to ascertain the cause of Ife's altered mental state or to treat him.

48. On July 22 or July 23, 2023, Ife was found unresponsive in his cell by ASGDC detention staff and was determined to have critically low blood sugar.

49. After discovering Ife, ASGDC staff called EMS to transfer him to the hospital. While en route to the hospital, Ife suffered tonic-clonic seizures.

50. After arriving at the hospital, Ife remained in an altered mental state and severely hypothermic.

51. Thereafter, doctors diagnosed Ife with acute encephalopathy with seizures, noting that it was a "very complex syndrome" with pancytopenia (reduction in white blood cells, red blood cells, and platelets), hyponatremia (low sodium levels), hypoglycemia (lowered glucose level), and hypothermia.

52. An ultrasound revealed evidence of chronic or acute kidney failure.

53. Doctors further noted that Ife's diagnoses could be related to his use of Abilify, indicating that Abilify is also known to cause agranulocytosis (low white blood cell count), to cause hypoglycemia, and/or to cause or worsen hyponatremia.

54. Additionally, the records indicate that doctors at the hospital spoke with a nurse at ASGDC who indicated that ASGDC staff, despite Ife's diabetes diagnosis, had not provided him with any treatment or medication for the disease. Notably, untreated diabetes can cause encephalopathy, hyponatremia, kidney failure, and weakening of the immune system.

55. As Ife's treatment progressed, doctors indicated they were concerned about the development of sepsis given Ife's severely low white blood-cell count.

56. Around 7:00 a.m. on July 25, 2023, Ife's oxygen saturation began dropping and he was intubated shortly before going into cardiac arrest. Doctors were ultimately unable to revive Ife and he died at 7:23 a.m.

57. After an autopsy, Ife's immediate cause of death was determined to be complications of sepsis.

58. The autopsy report further noted that Ife had never received treatment, medication, or insulin for his diabetes.

59. Additionally, it was determined that, at the time of his death, Ife suffered from diffuse alveolar damage, pulmonary edema, cholelithiasis, and unhealed skin abrasions, all symptoms of untreated and/or poorly managed diabetes.

**FOR A FIRST CAUSE OF ACTION**
**(Deliberate Indifference to Serious Medical Needs**
**in Violation of the Fourteenth Amendment)**
(*against Defendant Schafer, Defendant Williams, and the Doe Defendants*)

60. Plaintiff repeats and realleges the factual allegations in Paragraphs 9–59 as if fully restated herein.

61. The Defendants, each of them, had an affirmative duty to provide Ife with adequate medical care for serious medical needs during his confinement.

62. Defendant Schafer, Defendant Williams, and other Doe Defendants knew Ife was diagnosed with the serious illnesses of diabetes and schizophrenia.

63. Ife's serious medical needs were objectively known to these Defendants to be serious and require treatment.

64. The Defendants in this suit were aware of, and understood, the risks of their failure to treat Ife in the following ways:

    a. failing to provide any treatment for a detainee with diabetes;

    b. failing to monitor blood sugars of a detainee with diabetes;

    c. failing to monitor blood sugars of a diabetic patient after prescribing Abilify;

    d. failing to document monitoring and treatment for Ife;

    e. failing to ascertain and treat the cause of Ife's severe lower leg pain and pitting edema; and

    f. failing to send Ife out for outside medical care if they were without the resources to provide for his serious medical needs themselves.

65. The Defendants in this suit recklessly disregarded known risks to Ife's life.

66. The Defendants failed to perform the most basic level of treatment that could have easily prevented his foreseeable injuries and resulting death.

67. The conduct and actions of the Defendants, acting under color of state law, in failing to provide Ife access to adequate medical care for serious medical needs were unreasonable, were done intentionally, willfully, maliciously, and with deliberate indifference and/or reckless disregard for Ife's basic human needs, and caused needless injury and suffering.

68. The Defendants' conduct was objectively and subjectively unreasonable.

69. The Defendants' deliberate indifference to Ife's serious medical needs was the cause in fact and proximate cause of Ife's injuries.

70. The Defendants' deliberate indifference to Ife's serious medical needs constitutes a violation of Ife's substantive due process rights guaranteed under 42 U.S.C. § 1983 and the Fourteenth Amendment to the United States Constitution.

71. The Defendants are liable to Plaintiff for this deprivation of Ife's rights.

## JURY DEMAND

**WHEREFORE**, Plaintiff demands a trial by jury and respectfully requests that this Court award the following damages, jointly and severally against Defendants, as provided by South Carolina law and the United States Constitution, including but not limited to the following:

a. Compensatory, actual, and consequential damages to Plaintiff;

b. Costs of this action and attorney's fees to Plaintiff for the civil rights causes of action under 42 U.S.C. § 1988;

c. Loss of past and future support and services with interest;

d. Punitive damages; and

e. Such other and further relief as this Court may deem appropriate.

Respectfully submitted, this 19th day of November, 2025.

                                                    **STROM LAW FIRM, LLC**

                                                  *s/ Bakari T. Sellers*
                                                  Bakari T. Sellers (SC Fed. ID # 11099)
                                                  Mario A. Pacella (SC Fed. ID # 7538)
                                                  Amy E. Willbanks (SC Fed. ID # 13537)
                                                  Alexandra Benevento (SC Fed. ID # 10734)
                                                  Matthew B. Robins (SC Fed. ID # 13313)
                                                  6923 N. Trenholm Road, Suite 200

        Columbia, South Carolina 29206
        Phone: (803) 252-4800
        Email: bsellers@stromlaw.com
               mpacella@stromlaw.com
               awillbanks@stromlaw.com
               abenevento@stromlaw.com
               mrobins@stromlaw.com

*Attorneys for Plaintiff*